UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RASHEEM S. HARRIS,

                      Plaintiff,

                                              **Hon. Hugh B. Scott**

        v.

                                            05CV40S

                                          **Report**
                                          **&**

LAURENCE J. HIGLEY, et al.,               **Recommendation**

                      Defendants.

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 69[1]).  The instant matter before the Court is defendants' motion for summary judgment (Docket No. 61[2]).

       Originally, responses to this motion were due by August 22, 2008 (Docket No. 70).  Upon denial of plaintiff's motion to reconsider an Order denying appointment of counsel (Docket

---

      [1]Originally, this case was assigned to Judge John Elfvin and referred to Magistrate Judge Leslie Foschio, see Docket No. 19.  Magistrate Judge Foschio recused himself on September 6, 2007, Docket No. 41, and the case was referred to the undersigned, Docket No. 42.  Later, the case was assigned to Judge William Skretny, Docket No. 46.

      [2]In support of this motion, defendants submitted their counsel's declaration with exhibits (including manually filed video tape), Docket No. 60; the declarations of Sgt. Andrusz, Docket No. 62, Sgt. Hartman, Docket No. 63, Susan Post, Docket No. 64, Dr. Bukowski (with exhibits, including medical records filed under seal), Docket No. 65, Lawrence Higley, Docket No. 66; defendants' memorandum of law, Docket No. 67; and their statement of material facts, Docket No. 68.
      In opposition, plaintiff submits his memorandum in opposition (with exhibits), dated September 15, 2008, but received and filed by the Court on September 23, 2008, Docket No. 76.

Nos. 74, 75; see Docket Nos. 71, 72), responses to the defense motion were extended to

September 22, 2008, with any reply due by October 3, 2008, and the motion submitted (without

oral argument) on October 3, 2008.  Defendants also were granted a motion to seal portions of

their exhibits, plaintiff's medical records and a videotape (Docket No. 70).

## BACKGROUND

This is a pro se prisoner civil rights action alleging claims arising while plaintiff was

incarcerated at Wende Correctional Facility ("Wende")[3].  In May 14, 2004, plaintiff slipped in

the shower at Wende and was briefly hospitalized as a result.  Plaintiff then was placed in the

facility's infirmary for many months (save periods when he was incarcerated in Wende's Special

Housing Unit).

Plaintiff alleges that defendants were deliberately indifferent to his medical condition (in

violation of the Eighth Amendment) following his May 2004 slip and fall in the shower (Docket

No. 1, Compl.).  He claims that he was diagnosed with transverse myelitis (id. at 6), an

inflammation of the entire thickness of the spinal cord but limited longitudinally, Taber's

Cyclopedia Medical Dictionary 1166, 1167 (16th ed. 1989).  The defendants named include the

Commissioner of the Department of Correctional Services ("DOCS"), the superintendent at

Wende, the deputy superintendent of medicine, captain, sergeants and correctional officers,

registered nurses at Wende, and DOCS itself (id.).

In his first claim, plaintiff alleges that, as a result of his fall, he suffered from persistent

pain in his lower back and a lack of feeling in his lower extremities, and that he lost feeling from

---

[3]Plaintiff currently is in Five Points Correctional Facility, and has been there since July
28, 2005, see Docket No. 65, Bukowski Decl. ¶ 25.

the waist down as a result of defendants' deliberate indifference (id. at 5).  He was unable to

move without either a walker or wheelchair (id. at 5a).  He claims that he warned defendants of

the defects in the shower (the lack of a non-skid floor or hand railing) but no action was taken

prior to his fall (id.).

In his second claim, he alleges that he was transferred to the Wende Correctional Facility

infirmary from May 14, 2004, where he was deprived of a wheelchair or walker and thus had to

crawl and drag himself to move.  While in the infirmary, plaintiff was locked in isolation,

deprived of food, shower, visits, outdoor exercise, and medical appointments.  He alleges

deliberate indifference and failure to provide reasonable accommodations under Title II of the

Americans with Disabilities Act for his disabilities of transverse myelitis, asthma, and

schizophrenia.  (Id. at 6-6A.)  Defendants failed to provide plaintiff with a walker or wheelchair

or a shower chair (id. at 6A).  Plaintiff claims that defendants believe that he is "'faking'

paralysis" despite the fact that plaintiff has been paralyzed since May 2004 (id. at 6B).

In his third claim, plaintiff alleges that defendant sergeant Higley (pursuant to the

instruction or knowledge of other defendants) assaulted plaintiff, cuffing his hands behind him

while in a wheelchair and having the wheels rub against plaintiff's arms (id. at handwritten

inserted page 7).  On June 6, 2004, Higley pushed plaintiff in the face and threatened him.  When

plaintiff complained to defendants Superintendent Zon and Commissioner Goord, Higley

instructed officers to deny plaintiff recreation, visits, and other privileges; ultimately, plaintiff

was denied medical, mental health, and dental treatment, and legal visits (id.).  Higley and

defendant sergeant Hartman, on August 31, 2004, instructed a subordinate officer to drag

plaintiff out of his wheelchair and onto "the dirty floor of the prison without any provocation"

(id.) and was dragged in to Wende Special Housing Unit (id. at 7A).  He alleges deliberate

indifference to his medical needs and actions in retaliation, in violation of his Eighth and First

Amendment rights (id. at 7B).

Finally, in his fourth claim, plaintiff alleges that defendants maliciously ordered him to

walk without a walker or wheelchair and, when he was unable to comply with the order,

defendants fabricated disciplinary accusations against plaintiff, thus subjecting him to unjustified

administrative segregation or solitary confinement (id. at 8).

All of the individual defendants[4] answered on October 17, 2005 (Docket No. 18).

*Defense Motion for Summary Judgment*

After discovery and numerous motions for amendments to the Scheduling Order or

extension of the dispositive motion deadline (see Docket Nos. 51, 54[5] (defense motions for

extensions of time), 34, 48, 49, 50, 53, 56, 57 (amended Scheduling Orders); see also Docket No.

22 (initial Scheduling Order)), defendants filed their present summary judgment motion (Docket

No. 61).  In this motion, defendants claim that plaintiff has fictitious paralysis (Docket No. 64,

_____

[4]Defendants are retired sergeant Laurence (or Lawrence) Higley; captain Martin Kearney; deputy superintendent Susan Post; James Hartman; registered nurse Michael Sedar; registered nurse Yvonne Fisher; corrections officer Daniel Andrusz; retired Wende Superintendent Anthony Zon; retired Corrections Commissioner Glenn Goord; retired officer Glenda Crawley, see Docket No. 1, Compl.; Docket No. 18, Ans.; Docket No. 68, Defs. Statement, ¶ 1.
    DOCS and Wende Correctional Facility also were named as defendants, Docket No. 1, Compl.  Defendants note that other corrections employees (Ziolkowski, Monahan, Clarke, Boyd, Sadoni) were alleged as defendants in the Complaint, but defendant failed to amend the Complaint as ordered to assert claims against them, Docket No. 3, In Forma Pauperis Order at 2 n.3; see Docket No. 68, Defs. Statement at 1 n.1; these persons are not parties in this action.

[5]This extension was granted over plaintiff's objection, as noted in letter submitted by plaintiff to Chambers, dated May 22, 2008, but received May 27, 2008, after the Court granted the extension, see Docket Nos. 56, 57.

Post Decl. ¶ 2; Docket No. 68, Defs. Statement ¶ 14) and had no other injuries from the slip and

fall in the shower, save a bump on his head.  Defendants point out that plaintiff was admitted to

Erie County Medical Center the next day and had tests conducted on his spine which were

negative (Docket No. 68, Defs. Statement ¶¶ 10-17).

On plaintiff's first claim, defendants argue that plaintiff fails to prove defendants'

deliberate indifference and that plaintiff received "extraordinary care" (Docket No. 67, Defs.

Memo. at 9), noting that plaintiff refused tests for transverse myelitis (id. at 11) and a mental

health consultation was ordered for plaintiff for fictitious paralysis (id. at 16).

Regarding his second claim, defendants argue that plaintiff fails to prove subjective

intent, because plaintiff did not medically need a wheelchair or walker (id. at 17-18).  They argue

that plaintiff does not have claims under Americans with Disabilities Act ("ADA") against the

individual defendants, but only against DOCS and DOCS is not a defendant (id. at 18-19; but cf.

Docket No. 1, Compl. at 1, 2, naming DOCS as defendant, at 6 (2d claim, naming "Wende

Correctional Facility" as defendant)).

On his third claim, defendants argue that plaintiff filed a grievance only for June 12,

2004, incident and not for others, hence defendants conclude those others are barred by Prison

Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), although that defense was not asserted as

an affirmative defense in their Answer.  As for the June 12 incident, defendants contend that

plaintiff did not have a medically authenticated injury or any injury of constitutional significance.

(Docket No. 67, Defs. Memo. at 19-20.)

On the fourth claim, defendants argue that the allegations are too vague (Docket No. 67,

Defs. Memo. at 24).

5

*Plaintiff's Response*

Plaintiff points out in his (unsworn) memorandum that Drs. Cowan and Jacqueline Levitt prescribed physical therapy and equipment for him but defendants denied him access to them (Docket No. 76, Pl. Memo. at 1, 3, 6).  He points to two years of therapy he received after his transfer from Wende to Five Points Correctional Facility (id. at 2, 7; see also note 3 supra).

As for his Americans with Disabilities Act claim asserted in the second cause of action, plaintiff concludes that DOCS is a defendant in this action and that the individual defendants placed him in the Wende Special Housing Unit for eleven days and returned him to the infirmary for months thereafter without any amenities (Docket No. 76, Pl. Memo. at 7-8).  As for defendants' defense under the PLRA, plaintiff argues that he had "extensively exhausted" his claims (id. at 8; see id. Exs. A, D).  Plaintiff submits with his response various exhibits, including his grievances and correspondence to Dr. Levitt (Docket No. 76, Ex. A); an inmate injury report (with photographs) from May 10, 2005 (id., Ex. B); log book entries apparently from Wende Special Housing Unit (id., Ex. C); and formal complaints and grievances against the individual defendants (id., Ex. D).

Plaintiff disputes the defense contention that the force used against him was de minimis, asserting that his hands were handcuffed behind him while he was in a wheelchair, causing burning off the skin on his arms, and that he was assaulted in another instance by having his hands repeatedly hit a locker, leaving his hands swollen for days and aching for a few weeks (id., at 8, 5, 7).

Plaintiff alleges that each defendant had direct knowledge or involvement in the alleged situations, with defendant DOCS officials getting written notice of plaintiff's situation (cf. id. Ex. D) and not acting upon them (id. at 8).

Plaintiff claims that defendants' observations of him walking, standing, or moving without assistance were "fictitious," contending that inmates and other (non-defendant) Wende corrections officers did not see this (id.), but plaintiff fails to provide sworn statements from these persons or other proof in the record to support this contention (cf. id. at 9, claiming that plaintiff could not produce witnesses or affidavits because he does not have counsel).

Plaintiff makes various conclusory allegations supported by his grievances, producing only copies of his complaints and a few responses from the prison authorities in the grievance proceedings (cf. id.). For example, he claims that the individual defendants either knew or were involved in the alleged actions (id. at 8) but does not specify the knowledge or involvement of any defendant beyond his initial pleading allegations. He also responds that he was not sent to the Special Housing Unit for threatening a nurse and that the nurse lied in retaliation for grievances plaintiff had filed (id. at 7). These and other statements plaintiff makes without substantiation in the record. He did not file a sworn affidavit (either from himself or anyone else) or affirmation.

## DISCUSSION

I.     Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c).   The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres &

Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party

must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986), the party against whom summary judgment is sought, however, "must do more

than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis

in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir.

2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

Rule 56(d) allows the Court to "determine what material facts are not genuinely at issue.

The court should so determine by examining the pleadings and evidence before it and by

interrogating the attorneys.  It should then issue an order specifying what facts–including items of

damages or other relief–are not genuinely at issue.  The facts so specified must be treated as

established in the action." Fed. R. Civ. P. 56(d)(1) (effective Dec. 1, 2007).  When the Court

cannot grant summary judgment on the entire case, "it is empowered, when it would be

practicable to save time and expense and to simplify the trial, to issue an order that specifies the

facts that appear without substantial controversy," 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737, at 311-12 (Civil 3d ed. 1998) (footnote omitted).  Under Rule 56(d)(1), the Court does not enter judgment on part of a claim or grant partial relief; this rule merely allows the Court to specify issues that are not controverted, id. at 316, 318, and is better referred to as a "partial summary adjudication" to avoid the confusion with a judgment, id. at 324, 322-24.  If the Court determines that entering partial summary judgment does not materially expedite the adjudication, the Court may decline to do so, id. at 319.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, W.D.N.Y. Loc. Civ. R. 56.1(a), (b). The movant is to submit facts in which there is no genuine issue, id. R. 56.1(a), while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56.1(b).  "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority, id. R. 56.1(d).  All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, id. R. 56.1(c).  These Rules do not state what happens if an opponent fails to cite authority in support of its counter-statement of disputed facts.  The purpose of these statements, and the appendix of supporting evidence, id. R. 56.1(d), is to summarize and highlight for the Court the material factual issues, the authority in the evidentiary record for the purported facts, and whether the parties believe they are in dispute.

Complicating this is the fact that plaintiff is proceeding pro se as an inmate in pursuing

his action.  As such, the pleadings of a pro se plaintiff are to be liberally construed, see Haines v.

Kerner, 404 U.S. 519 (1972) (per curiam), while under this Court's rules he is responsible for

becoming familiar and complying with the Federal Rules of Civil Procedure and the Court's

Local Rules of Civil Procedure (including the rules regarding statements of fact on motions for

summary judgment), with failure to comply with either set of rules possibly resulting in dismissal

of the case with prejudice, W.D.N.Y. Loc. Civ. R. 5.2(e).  The Local Rules further provide notice

to the pro se litigant that under Rule 56 a plaintiff may not oppose summary judgment simply by

relying upon his earlier pleadings, "[r]ather, plaintiff must submit evidence, such as witness

statements or documents, countering the facts asserted by the defendant and raising issues of fact

for trial," id. R. 56.2.  "Any issue of fact that plaintiff wishes to raise in opposition to the motion

for summary judgment must be supported by affidavits or by other documentary evidence

contradicting the facts asserted by defendant[s].  If plaintiff does not respond on time with

affidavits or documentary evidence contradicting the facts asserted by defendant[s], the Court

may accept defendant[s'] factual assertions as true.  Judgment may then be entered in

defendant[s'] favor without a trial," id.  Plaintiff here was given due notice under Local Civil

Rule 56.2 (Docket No. 61, Notice of Motion at 2).

II.	Substantive Legal Standard

Plaintiff raises claims under the Eight Amendment (for deliberate indifference and

excessive use of force) and the ADA.

A.      Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, in order to state a claim for inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104). Plaintiff must prove that "the prison official knew of and disregarded the plaintiff's serious medical needs," Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hathaway, supra, 37 F.3d at 66). The Chance court also noted that "it is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation," Chance, supra, 143 F.3d at 703. Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).

The deliberate indifference claim has two elements: an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66. "Sufficiently

11

serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66). Plaintiff needs to prove that defendants wantonly intended to cause him to suffer. Wilson v. Seiter, supra, 501 U.S. at 302.

### B.    ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," 42 U.S.C. § 12132 (emphasis added).

## III.    Procedural Setting

Here, plaintiff did not submit a counter-statement of material facts or an affidavit contradicting the facts asserted by defendants as being not in dispute. He did submit documents as exhibits to his timely (but unsworn) memorandum of law (Docket No. 76), including various grievances and complaints initiating grievances and correspondence he submitted, photographs taken of him, and portions of his medical record (id.). There, he contests the facts defendants claim are not in dispute or are material.

On the ground of plaintiff failing to counter movants' statement of material facts with his own statement or sworn statements presenting his version of the facts alone, defendants should receive summary judgment, since the Court is bound to accept the statement of facts presented by them as being uncontroverted. But given that plaintiff is an inmate proceeding pro se (cf. Docket No. 76, Pl. Memo. at 9), his submissions countering defense stated facts will be considered and the Court will next discuss the merits of defendants' motion.

IV.     Application

    A.      First Claim–Deliberate Indifference to Plaintiff's Medical Condition

Defendants contend that plaintiff fails to establish either the subjective or objective prong for medical deliberate indifference.  They argue that plaintiff's medical record shows that he received "extraordinary medical care" relative to his paralysis.  (Docket No. 67, Defs. Memo. at 8-9, 9; Docket No. 65, Dr. Bukowski Decl.).  After plaintiff slipped in the shower, he was sent to Erie County Medical Center ("ECMC") the next day and had MRI and CATT scan testing performed on his alleged injured areas.  Both tests came back with negative results, showing no spinal injury or no indication of transverse myelitis (Docket No. 67, Defs. Memo. at 10).  To confirm the latter, doctors wished to take a lumbar puncture but plaintiff declined this test (id. at 10-11).  Subsequent medical examinations (at ECMC and Wende) found that plaintiff's paralysis was fictitious (id. at 11).  Plaintiff later was observed standing and walking without assistance while receiving treatments and being issued a wheelchair and a walker (id. at 12).  Plaintiff refutes this, noting Drs. Richard Cowan and Jacqueline Levitt had prescribed therapy and equipment (Docket No. 76, Pl. Memo. at 3, 6), but plaintiff does not point out specifically where in his medical record those references he is referring to are located.  Plaintiff also concludes that defendants' claims of him standing or walking unassisted are "fictitious" but without other (particularly sworn) proof that he needed assistance.

A review of plaintiff's medical record produced by defendants, however, reveals that physical therapy was prescribed to deal with symptoms of fictitious paralysis.  The same doctors plaintiff suggests supports his view in fact found that there was no organic cause for his paralysis (see Docket No. 65, Bukowski Decl. ¶¶ 9, 10, 11, 15, 16, 19), initially having an "indefinite

13

diagnosis" for his illness (Docket No. 60, Russo Decl. Ex. A, Dr. Levitt Memo.).  Dr. Levitt later

discontinued physical therapy as ineffective and ordered additional testing, that testing later

showed plaintiff's functioning to be normal (Docket No. 65, Bukowski Decl. ¶¶ 15-16, 19), but

physical therapy was resumed and continued through plaintiff's stay at Wende and continued

after his transfer to Five Points Correctional Facility (id. ¶¶ 25, 26).

Plaintiff's responses merely rely upon his allegations that he required a wheelchair absent

proof of a medical basis for it.  Summary judgment to defendants is thus **appropriate** here.

> B.      Second Claim–Americans With Disabilities Act

> > 1.      Individual Defendants' Liability

The Americans with Disabilities Act establishes civil liability against "public entities"

and not against individuals.  Defendants respond that the individual defendants (either in their

official or individual capacities) cannot be sued under either act, Garcia v. State Univ. of N.Y.

Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of ADA does not

provide for suits against persons in their individual capacity) (Docket No. 67, Defs. Memo. at 18-

19).  Plaintiff, however, only addresses this by stating that he sued the individual defendants in

their official capacities (Docket No. 76, Pl. Memo. at 9) and that they are liable through DOCS

(see id. at 7).

Plaintiff's claims against the individual defendants **should be dismissed** because the

Title II of the ADA applies to public entities and not their employees.  Defendants' motion for

summary judgment as to this claim as against the individual defendants **should be granted**.

       2.      Merits as to DOCS

Alternatively, defendants argue that Dr. Jacqueline Levitt made a medical judgment that plaintiff did not require a wheelchair or walker as of September 10, 2004 (Docket No. 67, Defs. Memo. at 19).  Plaintiff contends that Dr. Levitt had prescribed such equipment (Docket No. 76, Pl. Memo. at 1, 3, 6) but he does not point to the specific portion of the record or his medical record showing Dr. Levitt's diagnosis.  As discussed above for the First Claim, Dr. Levitt initially presented an indefinite diagnosis to plaintiff (see Docket No. 60, Russo Decl., Ex. A). Dr. Cowan prescribed physical therapy as a "face saving" method to get plaintiff to recover (see Docket No. 65, Bukowski Decl. ¶ 9), but even that treatment did not improve plaintiff's symptoms.  Plaintiff received psychological and psychiatric treatment as well as physical therapy for his paralysis (id. ¶¶ 17, 21-23, 26).  The doctors and the tests revealed that plaintiff's condition did not have a physical or organic source, hence their medical conclusion that plaintiff no longer needed a wheelchair or walker.

The Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132.  Assuming that a fictitious paralysis is a disability, defendants here have not discriminated against plaintiff and afforded him reasonable accommodations for that condition.  Therefore, defendants' motion for summary judgment as to DOCS should be **granted**.

15

C.      Third Claim–Deliberate Indifference by Supervisors

The Third Claim involves several incidents and different defendants (mostly involving defendant Higley).

1.      June 16 and 18, 2004

Plaintiff alleges that Higley (with the knowledge of Zon and Goord) assaulted him (see Docket No. 68, Defs. Statement ¶ 5).

2.      June 6, 2004

Plaintiff next alleges that Higley pushed plaintiff in his face.  When plaintiff complained, Higley allegedly instructed his subordinates to deny plaintiff various privileges.  (Docket No. 68, Defs. Statement ¶ 6.)

3.      Denial of Medical Care

Plaintiff next alleges that Higley denied him medical care, mental health and dental treatments, and legal visits.  Defendants contend that Higley generally had no personal involvement and that another corrections officer (sergeant Sindoni, not a defendant in this action) had a role in denying plaintiff dental treatment.  This denial of dental care was the only instance plaintiff administratively grieved.  (Docket No. 68, Defs. Statement ¶ 7; Docket No. 60, Defs. Atty. Decl. ¶ 7).

4.      August 31, 2004

Plaintiff next alleges that defendants Higley and Hartman instructed their subordinates to drag plaintiff out of his wheelchair and drag him to the Special Housing Unit (Docket No. 68, Defs. Statement ¶ 8).  Defendants argue that Hartman only used de minimis force in moving plaintiff (Docket No. 67, Defs. Memo. at 23; see Docket No. 60, Russo Decl, Ex. F (videotape of

16

incident)).  Plaintiff claims that, again pursuant to Higley's instruction, plaintiff was forced to

drink toilet water and was denied meals and medical care for eleven days, but his grievance on

this claim only alleged that he had an inability to move and consequently urinated and defecated

on himself (Docket No. 68, Defs. Statement ¶ 8).

      D.     Discussion of Third Claim

        1.     Prison Litigation Reform Act and Waiver of PLRA Defense

      Defendants assert that plaintiff only grieved one incident (that of June 12, 2004) and thus

most of the claim (such as the incidents on June 16 and 18, 2004) is barred by the PLRA for

plaintiff's failure to exhaust (Docket No. 67, Defs. Memo. at 19-20, 21-22).

      The Second Circuit has recognized that the failure to exhaust administrative remedies is

an affirmative defense that defendants can waive by failing to raise it, Johnson v. Testman,

380 F.3d 691, 695 (2d Cir. 2004); see Hemphill v. State of N.Y., 380 F.3d 680, 686 (2d Cir.

2004) (part of exhaustion analysis whether defendant "may have forfeited the affirmative defense

of non-exhaustion by failing to raise or preserve it").  In Johnson, defendants, in argument of

their motion for summary judgment, stated that they would not argue whether plaintiff exhausted

his handcuff incident claim against one defendant and the Court held defendants had waived

reliance on the PLRA with respect to that claim, 380 F.3d at 695-96.

      Here, defendants did not assert the failure to grieve as an affirmative defense in their

Answer and only raised the defense for the first time in this motion for summary judgment.  This

Court, in Leybinsky v. Millich, No. 98CV387, 2004 U.S. Dist. LEXIS 29642, at *5-7 (W.D.N.Y.

Sept. 29, 2004) (Arcara, Ch.J.), held that defendants, who failed to assert the exhaustion defense

in their Answer and did not assert it until after discovery was completed and that case was ready

for trial, waived that defense and denied summary judgment on that basis.  One other court, in

another circuit, has held that a similar failure to assert this affirmative defense was not a waiver

of that defense, holding that the plaintiff there was not prejudiced by the officers' delay in raising

the PLRA defense, Booth v. Pence, 354 F. Supp. 2d 553, 557 n.4 (E.D. Pa.), aff'd, 141 Fed.

Appx. 66 (3d Cir. 2005) (per curiam).

Adhering to the precedent in this District, Leybinsky, supra, 2004 U.S. Dist. LEXIS

29642, at *5-7, defendants waived their affirmative defense of failure to exhaust administrative

remedies for most of the incidents alleged in the Third Claim, save the June 12, 2004, incident

and **should not be granted summary judgment** on this ground.  Next, the Court considers the

merits of plaintiff's contentions in his Third Claim.

2.      Merits as to June 12 (16 or 18), 2004, Claim

Defendants contend that plaintiff cannot prove any injury arising from that incident, that

at most he may have red marks under his arm due to the wheel rubbing against it, but plaintiff did

not have medical documentation for that claimed injury (Docket No. 67, Defs. Memo. at 20).

Furthermore, the use of force alleged here was de minimis, see Hudson v. McMillian, 503 U.S. 1,

9 (1992) (id. at 20-21).

As was held in Hudson, "that is not to say that every malevolent touch by a prison guard

gives rise to a federal cause of action," id. at 9 (citing and quoting Johnson v. Glick, 481 F.2d

1028, 1033 (2d Cir.) ("not every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, violates a prisoner's constitutional rights"), cert. denied, 414

U.S.1033 (1973)).  The Eighth Amendment excludes from its prohibition against cruel and

unusual punishment de minimis uses of physical force, id. at 9-10.

Plaintiff here has not shown anything more than de minimis injury from this incident. Thus, defendants' motion for summary judgment as to this portion of plaintiff's third claims should be **granted**.

        3.      Merits of Other Incidents

As for the June 6, 2004, incident, defendants argue that (aside from not filing a grievance) the push here was de minimis and did not rise to the level of a constitutional violation (id. at 22). As for allegations that Sergeant Higley retaliated against plaintiff by having corrections officers deprive plaintiff of recreation, property, visits, and other privileges, defendants again argue that plaintiff did not file a grievance and that he alleged vague and conclusory allegations that are impossible to respond to (id.). As with the incident later in June 2004 discussed above, plaintiff has not shown any serious injury from the alleged use of force to be a constitutional violation and summary judgment as to this incident within the third claims should also be **granted**.

As for deprivation of medical care, defendants argue that Higley had no personal involvement in this incident, which is really a complaint against another sergeant (not a party in this action) (id. at 22-23). Absent personal involvement, defendants conclude the allegation against Higley here must be dismissed, see Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995) (id. at 23). On this basis, defendants **should be granted** summary judgment as to this part of plaintiff's third claim.

As for the August 31, 2004, incident, defendants argue again that Higley had no personal involvement in it (id.). Plaintiff does not refute this except his general statement that defendants had either direct knowledge or involvement in these incidents (cf. Docket No. 76, Pl. Memo. at 8), thus defendant Higley **should be granted** summary judgment as to this alleged incident.

Regarding Sergeant Hartman, defendants contend that the level of force used, with officers placing their arms under plaintiff to move him into a cell, was the force necessary to transport plaintiff into the Special Housing Unit and not to the level of constitutional violation (id.).  The Court reviewed the videotape of the August 31, 2004, transport of plaintiff.  The tape reveals that plaintiff was dragged on the floor into a cell in the Special Housing Unit, yelling all the way. Unidentified corrections officers asked plaintiff in a cell in the Special Housing Unit whether he could use his legs to stand or walk.  One officer indicated that he did not care if plaintiff could stand or not because plaintiff would have to get up and go into his new cell in the Special Housing Unit.

Defendants view this incident as an excessive force claim, while plaintiff alleges that this was an example of deliberate indifference.  Essentially, defendants claim that plaintiff fails the objective element of a deliberate indifference claim, that plaintiff's injury was not sufficiently serious to be a constitutional violation.  As a deliberate indifference claim, plaintiff fails to show serious injury in this incident.  At the time he was prescribed a wheelchair and physical therapy to deal with the fictitious paralysis but tests were taken around this time and shortly afterwards which showed no organic cause for plaintiff's paralysis.  As with the first cause of action, plaintiff here fails to state a claim for deliberate indifference as to the August 31 incident.  Since plaintiff did not allege here an excessive force claim, as to this incident summary judgment **should be granted**; as a result, defendants **should be granted** summary judgment dismissing the entire third claim.

20

D.     Fourth Claim–Deliberate Indifference

In his fourth claim, plaintiff alleges that defendant forced him to walk without his walker or wheelchair, with indifference to his need for this medical equipment.  But, as discussed above, defendants have established that he had no medical need for such equipment, from Dr. Levitt's discontinued use pending testing and that testing revealing that plaintiff's condition was normal (see Docket No. 65, Bukowski Decl. ¶¶ 16, 19; Docket No. 60, Russo Decl., Ex. G, Pl.'s Medical Records at bates number 000530 [under seal]).  His medical records indicated other inmates and prison employees witnessing plaintiff standing, walking, and moving without assistance, including being observed playing basketball following his transfer to Five Points Correctional Facility (Docket No. 65, Bukowski Decl. ¶¶ 9, 13, 27).  Therefore, defendants' motion for summary judgment as to this claim should be **granted**.

* * * *

Plaintiff's claims herein all stem from his apparent disagreement with the diagnosis made by the DOCS medical personnel.  When the defendants and other DOCS medical staff concluded that they could not find an organic cause for plaintiff's paralysis, they determined that he had a fictitious paralysis and no longer needed apparatus for that paralysis.  Claims based solely upon disagreements with medical decisions are not cognizable under § 1983, Jones v. Fischer, No. 07 Civ. 7589, 2008 U.S. Dist. LEXIS 60420, at *18 (S.D.N.Y. Aug. 7, 2008); Chance, supra, 143 F.3d at 703.  The fact that plaintiff wanted a different treatment (continued use of wheelchair and other apparatus) does not give rise to an Eighth Amendment deliberate indifference claim, Chance, supra, 143 F.3d at 703.

21

**CONCLUSION**

Based upon the above, it is recommended that defendants' motion for summary judgment (Docket No. 61) be **granted in part, denied in part**, to wit, denied as to dismissal on the Prison Litigation Reform Act exhaustion grounds, but granted on all other grounds.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        November 4, 2008